Kunkle, J.
The petition states that the' relator is the duly elected, qualified and acting solicitor of the city of Springfield; that the defendant is the duly elected, qualified and acting auditor of said city; that Jacob Kline is the duly appointed, qualified and acting director of the board of public service of said city; that said Kline, as such director, has determined that there should be employed in the department of public service, an inspector of sewers; that said inspector was and is necessary for the execution of the work'and performance of the duties of the department of *258 public service; that said Kline, as such director, on January 4, 1910, appointed Joseph J. Hackett inspector of sewers; that said Hackett entered upon his duties on said day; that the.compensation of said Hackett as such inspector, was fixed by said Kline at the rate of $100 per month, and that said Hackett, as such inspector, should be employed or discharged at the pleasure of said director of public service; that the council of said city had, prior to the employment of said inspector, appropriated the money necessary for the execution of the work and the performance of the duties of the department of public service; that on. January 31, 1910, the said director of public service duly prepared and approved an account of the compensation of said Hackett as such inspector, in the sum of $50, compensation for services rendered from January 15 to January 31, 1910, inclusive, and demanded that defendant issue a warrant for said amount in favor of said Hackett; that defendant, as auditor, in violation of the duties enjoined upon him by the laws of Ohio and the ordinances of the city of Springfield, failed and refused and still fails and refuses to issue the warrant of said city upon the treasurer of said city, for the purpose aforesaid; that said failure and refusal of defendant to issue said warrant prevents the proper execution .of the work and the performance of the duties of the department of public service; that relator has no complete or adequate remedy at law in the premises, and therefore asks that a writ of mandamus issue requiring the defendant to issue the warrant of the said city in the .amount aforesaid, upon the treasurer of said city in favor of said Hackett, for the purpose aforesaid.
The defendant demurs to the petition upon two grounds:
First. The plaintiff has not legal capacity to sue.
Second.- The petition does not state facts sufficient to constitute.a cause of action.
Has the solicitor legal capacity to bring this suit?
Section 1777, Revised Statutes (General Code, 4311-4313), provides:
“He-shall apply in the name of the corporation, to a court of competent jurisdiction for an order of injunction to restrain the *259 misapplication of funds of the corporation, or the abuse of its corporate powers. * * * And in case any officer or board fails to perform any duty expressly enjoined by law or ordinance, he shall apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of such duty.”
Has the auditor failed to perform any duty expressly enjoined by law or ordinance ?
The petition states that the defendant, in violation of the duties enjoined upon him by the laws of Ohio and the ordinances of the city of Springfield, has failed and refused to issue the warrant in question.
No ordinance of the city is plead, and this court can not take judicial notice of a city ordinance.
The defendant claims that a suit of this nature can not be brought by the solicitor; that it is a private suit of Mr. Hackett, and that Section 1777, Revised Statutes (General Code, 4311-4313), does not contemplate that the solicitor shall bring a suit for the purpose of determining the private rights of officials or other persons.
A number of decisions to this effect have been cited. The decisions show that the cases in question were dismissed because the court found that the suits were being prosecuted solely in the interest of private individuals and not for the benefit of the city.
Among the cases so cited are the following: Vadakin v. Crilly, 7 C.C.(N.S.), 341; Fergus v. Columbus, 6 N. P., 82; Brown v. Toledo, 10 C. C., 642; Gallagher v. Johnson, 31 Bul., 24.
An examination of these cases discloses that they were not disposed of upon demurrer, but upon a hearing ón the merits. Upon such hearing, it was apparent that the cases were being prosecuted solely for the benefit of persons other than the city, and the eases were therefore dismissed. We do not think, however, that this court could assume, upon demurrer, that this action was being prosecuted solely for the benefit of Mr. Hackett, and against the interests of the city. If upon a final hearing of the case, it should develop that the case was being prosecuted solely for the benefit of Mr. Hackett, the case could then be disposed of upon that ground.
*260 Section 137 of the Municipal Code of 1902 (General Code, 4305), provides, among other things, that the solicitor shall serve the several directors and officers mentioned in this act, as legal counsel and attorney, The solicitor is the legal advisor of the director of public service. He is also the legal advisor of the city auditor, and all other city officers. It becomes his duty to advise these officers as -to their rights and duties, and I think we are justified in assuming that the solicitor has advised the defendant that it was his duty to issue the warrant in question, and that the defendant, for -reasons satisfactory to himself, has declined to follow such advice, and issue the warrant in question.
Section 41 of the Municipal Code of 1902 (General Code, 3795), provides, among other things, that unless otherwise provided by law, no money shall be drawn from the treasury except upon the warrant of the auditor, pursuant to an appropriation by council. By virtue of this section, it becomes the duty of the auditor to issue his warrant upon the treasury to an appropriation by council, unless otherwise provided by law.
In order that progress may be had in the affairs of the city, we think, if possible, such construction should be given Section 1777, Revised Statutes (General Code, 4311-4313), as will permit the solicitor to maintain proceedings of this nature. We also think that under the provisions of Section 1777, Revised Statutes (General Code, 4311-4313), the solicitor is expressly authorized to bring a proceeding of this nature, and thus determine whether the auditor was or was not justified in refusing to issue the warrant in question.
The first branch of the demurrer may be overruled. As above stated, if the case is tried and it develops that the suit is being prosecuted solely at the request, and for the benefit of Mr. Iiackett, and that no public interest is being subserved by its prosecution, the case can then be disposed of upon that ground.
Does the petition state facts sufficient to constitute a cause of action ?
Has the Legislature conferred upon Mr. Kline, the director of public service, the right to fix the compensation of the employe in question?
*261 The solicitor has presented for the consideration of the- court a very complete review of the former legislation in Ohio, in so far as the same relates to fixing the compensation of various employes of the city.
Under the municipal code adopted in 1902, the board of public service exercised, to a large extent, the powers and duties of the present director of public service, and in this city the board of public affairs which preceded the board of public service, also exercised to a large extent the same powers and duties which were subsequently conferred upon the board of public service. Both of the former boards had authority to fix the compensation of employes, such as the one in question.
Has the Legislature changed the method of fixing the compensation of such employe?- If the Legislature has, either wisely or unwisely, changed the method of fixing such compensation, then- it becomes immaterial how such compensation was previously fixed.
The solicitor has called our attention to various rules which govern in the construction of statutes. Where statutes are ambiguous or incomplete, there .are certain rules, some of which are cited by counsel, which govern in the construction of such ambigous or incomplete statutes. These are the mere rules, however, which are intended to assist 'the court in arriving at the intention of the Legislature. If the intention of the Legislature can be ascertained from a reading of the statute in dispute, then such intention must be .ascertained from such reading of the statute itself, rather than by the application of any other rules- of construction.
In Slingluff v. Weaver, 66 Ohio St., 621, the first and second paragraphs of the syllabus are as follows:
“1. The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the lawmaking body which enacted it. And where its provisions- are ambiguous and its meaning doubtful, the history of legislation on the subject, and the consequences of .a literal interpretation of the language may be considered; punctuation may be changed or disregarded; words transposed, or those necessary to a clear understanding and, as shown by the context, manifestly intended, inserted.
*262 “2. But the intent of the law makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction. ’ ’
In King v. Cemetery Assn., 67 Ohio St., 240, 244, the court say:
“The intent of the Legislature is determined from what it says, and if its language is clear and unambiguous, the courts have no authority to change it. ’ ’
In 1902 there was enacted what is commonly known as the municipal code. This code made a number of changes in the law as it previously existed; and what is commonly known as the Payne law, which was passed in 1908, has made a number of radical changes in the municipal code, enacted in 1902.
The solicitor calls attention to the confusion which, in his opinion, will necessarily result in the management of city affairs, if the construction contended for by the defendant, is placed upon the sections in question.
We were impressed with the argument of the solicitor upon this point, and would doubtless be guided by his suggestions, if we had authority to enact legislation upon this subject. This court, however, has no authority to enact laws, it merely construes the laws which have been enacted.
Section 227 of the Payne law, enacted in 1908, and which is now in force (General Code, 4214), provides that council sba.U, by ordinance or resolution, except .as otherwise provided in this act, determine the number of officers, clerks and employes in any department of the city government, and shall fix, by ordinance or resolution, their respective salaries and compensation, and the amount of bond to be given by each officer, clerk or employe in any department of the city government, if any be required, and said bonds shall be made by such officer, clerk or employe with surety subject to the approval of the mayor of said city.
*263 This section clearly confers upon council, except as otherwise provided in that act, the right to determine the number of officers, clerks and employes in any department of the city government, and also confers upon council the right to fix, by ordinance or resolution, their respective salaries and compensation. Here is an express declaration upon the part of the Legislature that the council shall have the right to fix the salaries and compensation of all officers, clerks and employes in any department of the city government, except as otherwise provided in that act.
Has the authority to fix the compensation of the employe in question been conferred upon any other board or person by that act?
Our attention is called by the solicitor to Section 139 of the same act (General Code, 4324). This section is as follows:
‘ ‘ The director of public service shall manage and supervise all public works and undertakings of the city, except as otherwise provided by law and shall have all powers and perform all duties conferred by law upon the directors of public service or the board of public service, except as otherwise provided by law. ’ ’
In brief, it is claimed that the director of public service has all the powers and duties conferred upon the former directors of public service, or the board of public service. It is true he has the powers of such board, except as otherwise provided by law.
If the phrase, “except as otherwise provided by law,” was not contained in Section 139 (General Code, 4324), then there would be a conflict between the provisions of Section 139 (General Code, 4324) and Section 227 (General Code, 4214), and if such conflict existed, a court would then resort to the familiar rules of construction to determine what the Legislature really intended to enact.
In other words, if it was not for the last six words contained in Section 139 (General Code, 4324), then this section would have conferred upon the director of public service, all of the powers and duties formerly conferred upon the board of public service, and such board of public service formerly had the right to fix the compensation of the employe in question.
*264 Section. 139 (General Code, 4324), however, qualifies this power by saying that the director of public service shall have the powers of such other boards, except as otherwise provided by law, and in the same act, by virtue of Section 227 (General Code, 4214), the Legislature has provided that, “except as otherwise provided in this act” — not by law, or some other act— but except as otherwise provided in this act, the council shall fix and determine the salaries and compensation .of all employes in any department of the city government.
It is not claimed that there is any provision in the act in question, which specifically confers upon the director of public service the power of fixing the compensation of the employe in question. When these two sections are read together, we think it is apparent that the Legislature meant to confer the right of fixing the compensation of the employe in question upon council.
There is another section of the act in question, which we think throws some light upon the intention of the Legislature. Section 145 of the Municipal Code of 1902 (General Code, 4327), was amended in 1908 (99 O. L., 564), and forms part of the Payne law. Original Section 145 reads as follows:
‘ ‘ The directors of public service- may employ such superintendents, inspectors, engineers, harbor masters, clerks, laborers, •and other persons, as may be necessary for the execution of the powers and duties of this department, and may establish such sub-departments for the administration of affairs under said directors as may be deemed proper. The compensation and bond of all persons appointed or employed by' the department of public service shall be fixed by said directors, and no person shall be removed except for cause satisfactory to said directors or a majority of them.”
This section, as amended, 99 O. L., 564, and as now in force, reads as follows:
“The director of public service may éstablish such sub-departments as may be necessary and determine the number of superintendents, deputies, inspectors, engineers, harbor masters, clerks, laborers, and other persons as may be necessary for the execution of the work and the performance of the duties of this department. ’ ’
*265 It will be seen that the Legislature amended the section in question, and eliminated the provision that the compensation and bonds of all persons appointed or employed by the department of public service, shall be fixed by said directors.
It is apparent from this amendment that the Legislature intended to withdraw from the director of public service the right of fixing the compensation and bonds of the persons appointed or employed by the department of public service, and of placing such power in the hands of council.
When the duties of the director of public service, as defined by Sections 139, 140, 141 (General Code, 4324, 4325, 4326), etc., of the Payne law are considered, it will be found that his duties are to manage, supervise, to superintend, and not to legislate in any form.
Section 126 of the Municipal Code of 1902 (General Code, 4209, 4213), provides that council shall fix the salaries of all officers, clerks and employes in the city government, except as otherwise provided in that act. This section of the law of 1902 shows that the general policy of the Legislature, even at that time, was to place the fixing of salaries of employes in the council.
That act did contain a provision or exception, which conferred upon the board of public service the right to fix the compensation . of an employe, such as the one in question. When the Legislature enacted the Payne law, no such exception was made, and we must assume that the Legislature intended that council should fix the compensation of employes, such as the one in question.
We think the Legislature, by the enactment of what is known as the Payne law, has conferred upon council the right to fix the compensation of the employe in question, and the second branch of the demurrer will therefore be sustained.
' We might also suggest that a writ of mandamus will issue only in cases where the relator has a clear, legal right. This case does not come within that well established rule.
Counsel for defendant has suggested other reasons why this demurrer should be sustained. For example, it is claimed that the petition does not show the issuance, by the auditor, of a cer *266 tifieate that the money to be drawn from the treasury was in the fund, and not appropriated to any other úse, and also that the party in interest has a complete .and adequate remedy at law, and therefore a proceeding in mandamus is unnecessary.
We have not considered these suggestions as we preferred basing our decision upon the question in which counsel upon both sides are chiefly interested, rather than upon any of the other objections suggested. ■